# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

SEAN HARTRANFT, on behalf of himself and on behalf of a Class of all other persons similarly situated,

Plaintiff,

v.

ENCORE CAPITAL GROUP, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  3:18-cv-01187-BEN-RBB

**ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

**[ECF No. 28]**

## I.    <u>INTRODUCTION</u>

Plaintiff SEAN HARTRANFT, on behalf of himself and on behalf of a Class of all other persons similarly situated ("Plaintiff") brings this putative class action against Defendants ENCORE CAPITAL GROUP, INC., a Delaware corporation ("Defendant" or "Encore") and Does 1 through 100 for damages and injunctive relief for negligently and/or willfully or knowingly contacting Plaintiff on his cellular telephone to collect a debt owned by Defendant's subsidiary, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").  Second Amended Complaint, ECF No. 20 (the "SAC") at

2[1]:1-8; ECF No. 28 at 8:3-7.  Plaintiff pled his TCPA claim as a putative class action but pled his FDCPA claim as an individual action.  ECF No. 28 at 8:7-8.

Before the Court is Defendant's Motion to Compel Arbitration, Strike Class Allegations, and Stay Proceedings (the "Motion").  ECF No. 28.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 39.  After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS-IN-PART** Defendant's Motion.  The Court compels arbitration and strikes the class allegations but finds dismissal appropriate rather than a stay.

## II.   BACKGROUND

### A.   Statement of Facts

In August 2015, Plaintiff opened a Costco Anywhere Visa Card Account with American Express.  SAC at 4, ¶ 14; *see also* Mot. at 9:20-21; Oppo. at 7:21-22 (citing Declaration of Sean Hartranft at ¶ 3); Exhibit "B" to Reply Brief, ECF No. 35-1 at 21.

Sometime between January and March 2016,[2] Citibank, N.A. ("Citibank") sent Plaintiff a notice that his Costco credit card with American Express would soon become a Costco Visa credit card with Citibank.[3]  Peck Decl. at 3, ¶ 9; *see also* Exhibit "1" to Peck

---

[1]   Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

[2]   Although the notice does not contain a date, it states under "WHAT HAPPENS NEXT?" that from March-June 2016, Plaintiff should continue using his Costco card from American Express.  Exhibit "1" to Declaration of William Peck, ECF No. 28-2 ("Peck Decl.") at 7.  Thus, the Court finds it reasonable to infer that the notice was sent sometime before March 2016.

[3]   Plaintiff's declaration states that he does "not recall ever receiving a formal notice containing the terms of the new cardholder agreement, let alone the arbitration agreement." Declaration of Sean Hartranft in Support of Plaintiff's Opposition to Motion, ECF No. 30-1 ("Hartranft Decl.") at 2, ¶ 7.  However, despite stating he does not recall receiving the Arbitration Agreement, he never disputes actual receipt of the notice.  *See id.*

The common law "mailbox rule" presumes that an addressee receives a letter properly mailed.  *United States v. Meyer*, 914 F.3d 592, 595 (8th Cir. 2019); *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1251 (9th Cir. 2006).  The Ninth Circuit has held that "a sworn

Decl., ECF No. 28-2 at 7-8; Mot. at 9:21-10:2; Oppo. at 7:22-23.  Plaintiff alleges in the SAC that when the conversion occurred, the balance from the old card was transferred to the new card along with a new creditor, Defendant.  SAC at 4, ¶ 14.

Later that spring, on April 8, 2016, Citibank sent Plaintiff a formal transfer notice for the account, informing him that his new Costco Anywhere card from Citibank would be sent within four to six weeks.  Mot. at 10:3-5 (citing Peck Decl. at 4, ¶ 10; Exhibit "2" to Peck Decl., Card Agreement Guide, ECF No. 28-2 (the "Card Agreement")).  This notice

---

statement is credible evidence of mailing for purposes of the mailbox rule." *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 964 (9th Cir. 2001).  In his declaration, Mr. Peck declared that (1) it was Citibank's regular business practice to send a new card agreement to customers at the time of transitioning into a new account; (2) Exhibit 2 to his declaration reflects a true and correct copy of the form transfer notice and card agreement that Citibank's records reflect were sent to Plaintiff on August 8, 2016; and (3) "[i]t was, and is, Citibank's regular business practice to include a note in card members' computerized account records when mail is returned undeliverable," and Citibank had no record that the postal service returned any mailings related to Plaintiff's account.  *See* Peck Decl. at 4, ¶¶ 10-12.  The presumption under the mailbox rule may be rebutted by evidence showing the document never arrived, "[m]erely stating that the document isn't in the addressee's files or records—which is all that the state has done in this case—is insufficient to defeat the presumption of receipt." *Huizar v. Carey*, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001); *see also Meyer*, 914 F.3d at 595.  However, "rebuttal evidence must rise beyond the level of a mere denial of receipt; this is because the mailbox rule applies precisely to avoid the type of swearing contest in which the parties are presently involved." *Izett v. Crown Asset Mgmt., LLC*, No. 18-CV-05224-EMC, 2019 WL 4845575, at *6 (N.D. Cal. Oct. 1, 2019) (internal quotations omitted).

Here, Plaintiff does not deny living at the address to which the Card Agreement was sent.  *See generally* Hartranft Decl.  He also does not deny receiving other mail from Citibank at that address.  He also admits he knew the card was converted but simply denies receiving a "formal notice." *Id.* at 2, ¶ 7.  Thus, the Court considers Mr. Peck's declaration as credible evidence that Citibank mailed the notice and agreement to Plaintiff, and that he received them. *See, e.g., Izett*, 2019 WL 4845575 at *6 (rejecting a plaintiff's similar arguments that he did not recall receiving the same Card Agreement Guide from Citibank because Mr. Peck's nearly identical declaration provided credible evidence that the document had been mailed).  Further, the Court finds that Plaintiff has failed to rebut the presumption that Citibank mailed him the Card Agreements, and the Court assumes as true that Plaintiff received the notice in light of Mr. Peck's declaration.

included a copy of the Card Agreement, which, in turn, included the new terms and conditions that would govern the account.  Mot. at 10:5-6 (citing Peck Decl. at ¶ 10; Ex. 2).

First, the Card Agreement Guide provided that the "Agreement takes effect once you use your Card," and "[e]ven if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement." Card Agreement Guide at 16.  A statement from September 9, 2016, showing charges from August 8, 2016 through September 8, 2016 and a balance of $16,613.35, indicates that Plaintiff, according to the terms of the notice in the Card Agreement, accepted the Card Agreement.  *See* Exhibit "3" to Peck Decl., ECF No. 28-2 at 28.

Second, the Card Agreement Guide also had a section entitled "COMMUNICATIONS," which stated, "You agree that we (and/or our service providers or anyone we authorize) may contact you at any phone number, email address, or mailing address you provide or we obtain in other ways," which "includes communications to mobile, cellular/wireless, or similar devices . . . by live operator, auto-dialer, recorded or artificial voice, text, or email."  Card Agreement Guide at 22; *compare* 47 U.S.C. § 227(b)(1)(A) (making it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . . to make any call (other than a call . . . ***made with the prior express consent of the called party***) using any automatic telephone dialing system or an artificial or prerecorded voice") (emphasis added).

Third, the Card Agreement Guide had a section entitled "Arbitration," which stated that it "you cannot go to court, have a jury trial or initiate or participate in a class action if you have a dispute with us."  Card Agreement Guide at 14.  Later, the Card Agreement Guide dedicated over a full page to the arbitration terms (the "Arbitration Provision"):

**ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

-4-

> This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action.  In arbitration, disputes are resolved by an arbitrator, not a judge or jury.  Arbitration procedures are simpler and more limited than in court.  This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.
>
> **Covered claims**
>
> - You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account, or our relationship (called "Claims").
> - If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleader or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims.  This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative, or an affiliated/parent/subsidiary company.
>
> . . . .
>
> **Rules for rejecting this arbitration provision**
>
> You may reject this arbitration provision by sending a written rejection notice to us at PO Box 790085; St. Louis, MO 63179-0085.  Your rejection notice must be postmarked by 08/03/2016.

Card Agreement Guide at 22-23.

Fourth, the arbitration provision included a class action waiver prohibiting Plaintiff from participating in a class or acting as a class representative:

> Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis.  The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action

1   or other representative action.

2   Card Agreement Guide at 22.

3       Fifth, the Card Agreement also contained a provision entitled, "Assignment," which

4   stated, "We may assign any or all of our rights and obligations under this Agreement to a

5   third party."  Card Agreement Guide at 23.

6       Finally, the Card Agreement provided that "[f]ederal law and the law of South

7   Dakota govern the terms and enforcement of this Agreement."  Card Agreement Guide at

8   23.

9       As of September 9, 2016, Plaintiff had an outstanding balance on his card of

10  $16,613.35.  *See* Exhibit "2" to Peck Decl., ECF No. 28-3 at 8.  Encore, the named

11  defendant in this case, is the ultimate corporate parent of Midland Funding, LLC ("Midland

12  Funding"), which purchased Plaintiff's account, and Midland Credit Management

13  ("MCM"), which services and manages the debts Midland Funding purchases.  Declaration

14  of Sarah Cosgrave, ECF No. 28-1 ("Cosgrave Decl.") at 2, ¶ 4; *see also* Declaration of

15  Adam Swaninger in Support of Motion, ECF No. 28-3 ("Swaninger Decl.") at 2, ¶¶ 3-4.

16  Just over ten months later, on July 28, 2017, Midland Funding purchased a portfolio of

17  charged-off Costco credit card accounts from Citibank.  Cosgrave Decl. at 2, ¶ 4; *see also*

18  Exhibit "1" to Cosgrave Decl., ECF No. 28-1 at 5.  One of the accounts sold under this

19  transaction was a Costco Anywhere card issued by Citibank to Plaintiff ending in 993.  *Id.*

20  at 3, ¶ 4.

21      Plaintiff claims that from September 19, 2017 to October 2, 2017, Encore called his

22  phone twenty-four times using an auto dialer from the numbers (800) 888-9419 and (877)

23  445-4581.  Hartranft Decl. at 2, ¶¶ 4-5; *see also* SAC at 2, 3, ¶ 9, 4, ¶¶ 14-16.  However,

24  Encore, the only named defendant in this case, "does not own, purchase, collect, or service

25  consumer debt."  *Id.* at 2, ¶ 4.

26  **B.   Procedural History**

27      On June 6, 2018, Plaintiff filed this lawsuit, alleging two claims for relief for (1)

28  negligent violations of the TCPA and (2) knowing and/or willful violations of the TCPA.

Compl., ECF No. 1 at 9.  On June 18, 2018, before Defendant answered, Plaintiff failed a First Amended Complaint.  *See* ECF No. 3 at 9.

On July 10, 2018, Defendant filed an answer to the Complaint, ECF No. 4, and Notice of Related Case, ECF No. 6.  In the Notice of Related Case, Defendant advised that there was a related Multidistrict Litigation currently pending in the United States District Court for the Southern District of California before the Honorable Michael M. Anello: *In re: Midland Credit Management, Inc., Tel. Consumer Prot. Act Litig. (In re: MCM)*, Case No. 11-md-2286-MMA-MDD (the "MDL").  ECF No. 6 at 2:1-5.  Defendant informed the Court that the MDL had been created by the Judicial Panel on Multidistrict Litigation in October 2011, due to the pendency of multiple overlapping lawsuits alleging that Encore and/or Midland Funding violated the TCPA by placing debt-collection calls to the plaintiffs' cellular phones using an automatic telephone dialing system.  *See In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig. (In re MCM I)*, 818 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2011).  Defendant noted that there were currently approximately 200 active cases in the MDL, all of which are TCPA lawsuits against Midland and/or Encore. ECF No. 6 at 2:6-20.  Encore also informed the Court that in both the MDL and this case, (1) the plaintiffs alleged the defendants violated the TCPA by placings calls to their cellular phones using an automatic telephone dialing system; (2) the plaintiffs sought to represent a putative class consisting of consumers allegedly called by the defendants during overlapping time periods; and (3) the complaints asserted the same TCPA claims, based on the same alleged facts and legal theories.  *Id.* at 2:16-27.  Thus, Encore asked that this case be transferred to Judge Anello for coordination with the MDL proceedings and to conserve judicial resources, prevent duplication of work, and mitigate the risk of inconsistent rulings. *Id.* at 3:9-13.

On September 20, 2018, Magistrate Judge Ruben B. Brooks issued the operative Scheduling Order in this case, which set the deadline to file a motion for class certification as April 22, 2019.  Order, ECF No. 12 at 4, ¶ 9.

On October 11, 2018, Encore filed a Motion to Dismiss or Stay the Proceedings

-7-

Pursuant to Local Rule 40.1, which provides that where a case qualifies as related, it will be transferred to the judge with the low-numbered case.  ECF No. 13.  However, after Plaintiff opposed, ECF No. 15, and Defendant replied, ECF No. 16, both parties filed a Motion for Leave to File a Second Amended Complaint, ECF No. 18, which the Court granted on November 29, 2018, ECF No. 19.  The following day, on November 30, 2018, Plaintiff filed the Second Amended Complaint, adding a third claim for relief for violations of the FDCPA.  *See* SAC.  On December 14, 2018, Defendant answered.  ECF No. 21.

On August 12, 2019, Plaintiff filed a Motion to Intervene in the MDL before Judge Anello.  ECF No. 698.  Defendant did not oppose Plaintiff's intervention.  *See* ECF No. 699.  On November 4, 2019, Judge Anello denied Plaintiff's Motion to Intervene, finding that (1) Plaintiff failed to meet any of the requirements necessary to intervene as a matter of right; (2) Plaintiff's permissive intervention "would effectively contravene and circumvent [the] February 8, 2018[,] order that . . . barred new members [sic] cases from entering the MDL"; and (3) Plaintiff's motion failed "to detail what form or function intervention would take."  *In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig. (In re MCM IV)*, No. 3:11-MD-2286-MMA-MDD, 2019 WL 5698234, at *1-3 n.4 (S.D. Cal. Nov. 4, 2019), *aff'd*, 829 F. App'x 805 (9th Cir. 2020).

Almost one year after filling the SAC, on December 11, 2019, Defendant filed the instant Motion to Compel Arbitration, Strike Class Allegations, and Stay Proceedings.  Motion, ECF No. 28 ("Mot.").  In the Motion, Defendant indicates that as of the date of filing, no discovery had taken place in this case.  Mot. at 13:2-3.  On January 7, 2020, Plaintiff opposed.  Opposition, ECF No. 30 ("Oppo.").  On January 14, 2020, Defendant replied.  Reply, ECF No. 35 ("Reply").

On January 7, 2020, while the instant Motion was pending, Plaintiff filed his own Motion to Stay Proceedings Pending Plaintiff's Appeal of the Denial of His Motion to Intervene in the *Midland Funding* Case.  ECF No. 29.  On January 27, 2020, Defendant filed a limited opposition to Plaintiff's Motion to Stay.  ECF No. 36.  On February 3, 2020, Plaintiff filed a limited reply, arguing that the Court should defer ruling on Defendant's

1  Motion to Compel Arbitration if it felt inclined to compel arbitration.  ECF No. 40.
2  Accordingly, on July 30, 2020, this Court granted Plaintiff's Motion to Stay the Case until
3  the Ninth Circuit reached a decision in Case No. 19-56390, *In re: Sean Hartranft v.*
4  *Midland Funding, LLC*.  Order, ECF No. 46.  The Court's order granting the stay required
5  Plaintiff's counsel to notify the Court within seven days of a decision in its appeal.  Order,
6  ECF No. 46 at 2.  In the order, the Court also noted that the parties in the MDL proceedings
7  before Judge Anello had asked for a stay pending the decision in a case recently granted
8  certiorari by the United States Supreme Court concerning the TCPA in *Facebook Inc. v.*
9  *Duguid*, Supreme Court Dkt. No. 19-511, *cert. granted* (July 9, 2020).  At the time the
10  Court entered the order staying this case, the deadline for Plaintiff to file a motion for class
11  certification had passed nine (9) months earlier without Plaintiff ever filing such a motion
12  much less even seeking to extend the deadline.

13  On November 19, 2020, the Ninth Circuit issued an opinion, affirming Judge
14  Anello's decision denying Plaintiff's Motion to Intervene in the MDL while also finding
15  that he did not abuse his discretion by concluding that the motion to intervene was
16  untimely.  *In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig. (In re MCM*
17  *V)*, 829 F. App'x 805, 806 (9th Cir. 2020).  Seven (7) days later, however, Plaintiff failed
18  to provide notice to this Court of the Ninth Circuit's decision, as he had been ordered to
19  do.  *See* Order, ECF No. 46.

20  According to the original Case Management Order in this case, the Settlement
21  Conference in this case had been scheduled for October 7, 2020 at 8:30 a.m.  Thus, during
22  the stay, Judge Brooks vacated the settlement conference, re-scheduling it for April 6, 2021
23  at 8:30 a.m.

24  On April 1, 2021, the United States Supreme Court issued its opinion in the *Duguid*
25  case. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167, 1169 (2021).  The Court held
26  that (1) "[t]o qualify as an 'automatic telephone dialing system,' a device must have the
27  capacity either to store a telephone number using a random or sequential generator or to
28  produce a telephone number using a random or sequential number generator," and (2)

"[b]ecause Facebook's notification system neither stores nor produces numbers 'using a random or sequential number generator,' it is not an autodialer" within the meaning of the TCPA. *See id.* Several days later, on April 6, 2021, at 8:30 a.m., the continued settlement conference went forward in light of the fact that the Ninth Circuit had made its decision, but Plaintiff's counsel failed to appear. Minute Order, ECF No. 48. That same day, Magistrate Judge Brooks issued an Order to Show Cause ("OSC") to Plaintiff's counsel as to why sanctions should not issue, noting that (1) this Court's previous order had ordered Plaintiff to provide notice of the Ninth Circuit's decision within seven days; (2) the Ninth Circuit had issued its opinion on November 19, 2020; (3) and to date, Plaintiff's counsel had not notified the Court of the decision. Order, ECF No. 49. Judge Brooks set the hearing on the OSC for May 4, 2021. *See id.*

On April 16, 2021, Plaintiff's counsel, Richard E. Quintilone II, Esq. ("Mr. Quintilone") submitted a declaration in response to the OSC, stating that he was on a pre-paid family vacation in Mexico on April 6, 2021, had planned on calling into the Settlement Conference, but the "800" number provided did not work. ECF No. 51 at 2, ¶ 3. That same day, Plaintiff also filed a Notice of Ninth Circuit Opinion. ECF No. 50.

On May 4, 2021, the OSC took place before Judge Brooks, but Mr. Quintilone again failed to appear. Minute Order, ECF No. 52. Thus, Judge Brooks continued the hearing on the OSC for Mr. Quintilone's previous failure to appear on April 6th to June 9, 2021 at 8:30 a.m., ordering Mr. Quintilone to appear and show cause why sanctions should not be issued for his second failure to appear. Order, ECF No. 53.

On May 7, 2021, Mr. Quintilone submitted a declaration in response to the new OSC, stating that (1) his failure to appear on May 4, 2021 had been due to confusion as to who was appearing (although the explanation is confusing and difficult to follow); (2) he had tried to dial in late, explain the confusion, and "clarify whether the Court had placed a stay on the proceedings while the matter is appealed"[4]; and (3) he has submitted a petition for

---

[4]    There should have been no confusion on this matter. Mr. Quintilone had been ordered to inform the Court within seven (7) days of the Ninth Circuit's decision so the

-10-

1   Writ of Certiorari regarding the denial of Plaintiff's Motion to intervene in the MDL case
2   to the United States Supreme Court.  ECF No. 43 at 2-3.

3       On June 9, 2021, the OSC and Settlement Conference finally went forward, and the
4   case did not settle.  Minute Order, ECF No. 55.  Further, Judge Brooks exercised his
5   discretion to not impose sanctions for Mr. Quintilone's failure to appear on April 6, 2021
6   and May 4, 2021.  *See id.*

7   **III.   LEGAL STANDARD**

8       **A.   Motion to Compel Arbitration**

9       Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration
10  agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist
11  at law or in equity for the revocation of a contract."  9 U.S.C. § 2.  "Once the court has
12  determined that an arbitration agreement relates to a transaction involving interstate
13  commerce, thereby falling under the FAA, the court's only role is to determine [1] whether
14  a valid arbitration agreement exists and [2] whether the scope of the dispute falls within
15  that agreement."  *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at
16  *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys.,*
17  *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

18      **B.   Motion to Dismiss Under Rule 12(b)(1)[5]**

19      Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") allows a
20  defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject
21  matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "If the court determines at any time that it

22
23  Court could lift the stay but never did.  The MDL case, and Plaintiff's appeal of the denial
24  of his motion to intervene, although related to this case, are not part of this case as the
    matters have not been consolidated.  Thus, the stay should have been lifted after the Ninth
25  Circuit's decision, so the Court could address the matters it addresses now in the instant
    Motion.
26  [5]    Although Defendant labeled the Motion as "Motion to Compel Arbitration, Strike
27  Class Allegations, and Stay Proceedings," Defendant's substantive Motion asks for the
    case to be either "dismissed or stayed pending the arbitration's conclusion."  Mot. at 23:25-
28  27.  Thus, the Court construes the Motion as including a request to dismiss as well.

lacks subject matter-jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). "Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019). As a result, the plaintiff, as "[t]he party asserting jurisdiction[,] bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *DRAM*, 546 F.3d at 984.

## C.   Motion to Strike Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matters are "those which ha[ve] no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). Impertinent matters "do not pertain, and are not necessary, to the issues in question." *Id.* (internal quotation marks omitted).

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). "Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.'" *Luxul Tech. Inc. v. NectarLux, LLC*, 2015 WL 4692571, at *3 (N.D. Cal. Aug. 6, 2015) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). The decision to grant a motion to strike ultimately lies within the discretion of the trial court. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271-72 (N.D. Cal. 2015) (citing *Whittlestone*, 618 F.3d at 973); *see Whittlestone*, 618 F.3d at 973 ("We review the district

1  court's decision to strike matter pursuant to Federal Rule of Civil Procedure 12(f) for abuse
2  of discretion."  (internal quotation marks omitted)).

3  ### D.   <u>Motion to Stay</u>

4  Where a plaintiff files suit "in any of the courts of the United States upon any issue
5  referable to arbitration under an agreement in writing for . . . arbitration, the court in which
6  such suit is pending, upon being satisfied that the issue . . . is referable to arbitration . . .
7  shall on application of one of the parties stay the trial of the action until such arbitration."
8  9 U.S.C. § 3.  A court's power to stay proceedings is incidental to the inherent power to
9  control the disposition of its cases in the interests of efficiency and fairness to the court,
10  counsel, and litigants.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  A stay may be
11  granted pending the outcome of other legal proceedings related to the case in the interests
12  of judicial economy.  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th
13  Cir. 1979).  Discretion to stay a case is appropriately exercised when the resolution of
14  another matter will have a direct impact on the issues before the court, thereby substantially
15  simplifying the issues presented.  *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708
16  F.2d 1458, 1465 (9th Cir. 1983).  In determining whether a stay is appropriate, a district
17  court "must weigh competing interests and maintain an even balance."  *Landis*, 299 U.S.
18  at 254-55.  "[I]f there is even a fair possibility that the stay . . . will work damage to some
19  one else, the stay may be inappropriate absent a showing by the moving party of hardship
20  or inequity."  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059,
21  1066 (9th Cir. 2007) (citation and internal quotation marks omitted).

22  ## IV.   <u>DISCUSSION</u>

23  Although Plaintiff never pleads what the calls about which he complains were
24  regarding in the operative complaint, *see generally* SAC, Defendant states "[t]he calls at
25  issue were to collect Hartranft's unpaid Costco Anywhere account."  Mot. at 8:12.
26  Defendant also states that "[a]fter Hartranft charged over $16,000 on his Costco card and
27  did not pay his bill, the issuer of the card, Citibank, assigned his account and all of its rights
28  under the cardholder agreement to Midland Funding."  *Id.* at 8:15-17.  As the assignee of

-13-

Citibank's rights,[6] "Midland Funding stepped into the shoes of Citibank and has the same rights to compel arbitration that Citibank would have." Mot. at 8:17-19. Defendant argues that given Plaintiff's claims are subject to mandatory arbitration with a class action waiver, the Court should compel Plaintiff to arbitration with Defendant, Midland Funding's parent company, while staying the case pending the arbitration proceeding. *Id.* at 8:8-11.

Instead of arguing that Encore cannot enforce the Arbitration Provision as a non-signatory to the Card Agreement, Plaintiff argues that the Court should not enforce the

---

[6] Defendant preemptively addresses the issue of whether Encore, as a non-signatory to the Card Agreement, can enforce the Arbitration Provision as the parent company of Midland Funding, who is the assignee of Citibank's rights under the Card Agreement. Mot. at 8:17-21, 18:6-22:2. Notably, Plaintiff fails to address this argument in his Opposition, and as such, apparently, does not dispute (or at least has waived any argument to the contrary) that Encore can enforce Citibank's rights under the Card Agreement. *Compare* Oppo. (failing to address the assignment issue) *with Franchise Tax Bd. of California v. Hyatt*, —— U.S. ——, 139 S. Ct. 1485, 1491, n. 1 (2019) (deeming an argument waived where the defendant failed to raise an issue in the opposition brief); *see also* S.D. Cal. Civ. R. 7.1. Encore's ability to enforce Citibank's rights to arbitration under the Card Agreement is confirmed by both the facts and the law. The Card Agreement itself expressly provides that Citibank "may assign any or all of our rights and obligations under this Agreement to a third party." Card Agreement Guide at 23. It also states that claims subject to arbitration include "Claims made . . . against anyone connected with us . . . such as . . . an affiliated/parent/subsidiary company." *Id.* Further, other cases addressing motions to compel arbitration brought by Midland Funding or MCM following an assignment of rights by Citibank under the same Citibank Card Agreement have held that "the cases support its decision that assignees have a right to compel arbitration where there is a valid assignment." *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig. (In re MCM III)*, No. 11MD2286-MMA (MDD), 2019 WL 1676015, at *3 (S.D. Cal. Apr. 17, 2019) (applying South Dakota law). In fact, "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009). Defendant points out that "[t]o hold otherwise would allow plaintiffs to circumvent arbitration agreements simply by suing a parent company in addition to or instead of, the signatory." Mot. at 9:1-3. Given the Court finds the evidence establishes the calls at issue were made by MCM, rather than Encore, but Plaintiff, nonetheless, sued Encore, the Court questions whether naming Encore represented an attempt to circumvent the Arbitration Provision.

-14-

Arbitration Provision because Plaintiff himself never signed it, and the Card Agreement is unconscionable.  Oppo. at 6:3-12.  He also argues that (1) Defendant waived its right to arbitration; (2) the Court should deny the Motion to Strike the Class Allegations because it should either grant leave to amend those allegations, or if it finds arbitration appropriate, allow the arbitrator to determine whether the Arbitration Provision permits such claims; and (3) the Court should stay, rather than dismiss, this case.  *Id.* at 6:3-12, 20:17-21:11.

In reply, Defendant points out that Plaintiff "does not dispute that the arbitration provision in his Citibank cardholder agreement covers both causes of action alleged in his complaint" or "was properly assigned to Midland Funding," allowing Encore to enforce the Arbitration Provision as Midland Funding's parent corporation.  Reply at 2:2-6.  Defendant also argues that Plaintiff's remaining arguments for why the Court should reject the arbitration agreement lack merit.  *Id.* at 2:6-3:7.

As analyzed below, the Arbitration Provision between Plaintiff and Defendant is part of the Card Agreement, which Plaintiff accepted once he used his Costco Anywhere Visa Card.  SAC at 4, ¶ 14.  The Arbitration Provision states that it covers "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account, or our relationship," including but not limited to those "based on . . . statutory or regulatory provisions, or any other sources of law."  Card Agreement at 22.  Plaintiff's dispute with Defendant arises out of statutes (the TCPA and FDCPA), exists between himself and the parent company of the original lender's assignee, Defendant, and relates to the resulting creditor-debtor relationship arising out of the Card Agreement.  Thus, as outlined below, the Court finds the Arbitration Provision in the Card Agreement at issue constitutes a valid agreement to arbitrate and is unpersuaded by Plaintiff's arguments that the Arbitration Provision is unconscionable.  The Court also finds Defendant's Motion to Strike the Class Allegations moot given Plaintiff failed to file a Motion for Class Certification by the deadline imposed in the Court's Scheduling Order.  Finally, the Court concludes that a dismissal of the case, rather than a stay, is appropriate under the circumstances.

### A.   <u>Jurisdiction</u>

The FAA allows a party aggrieved by another party's failure to arbitrate pursuant to a valid arbitration agreement to bring either an original petition to arbitrate, or where an action has already been filed, a motion to compel arbitration "in any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter arising out of the controversy between the parties." 9 U.S.C. § 4.  Under 28 U.S.C. § 1331, "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Plaintiff filed suit under two federal laws, the TCPA and FDCPA.  However, the SAC alleges that "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (iii) . . . at least one plaintiff and defendant are citizens of different states."  SAC at 3, ¶ 4.  In other words, Plaintiff bases this Court's jurisdiction on diversity jurisdiction and the federal statute vesting district courts with "original jurisdiction of any civil [class] action in which the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). However, Plaintiff never moved for class certification.  Thus, the Court's jurisdiction based on this matter being a class action no longer exists given Plaintiff never moved to certify the class, and the deadline to do so passed before the Court stayed this case.  That being said, the Court must examine subject-matter jurisdiction *sua sponte*, if necessary, *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008), and upon doing so, finds it has subject-matter jurisdiction to determine this Motion.

The TCPA provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court

of a State bring in an appropriate court of that State."[7]  47 U.S.C. § 227(e)(5).  The FDCPA, in turn, provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction."  15 U.S.C. § 1692k(d).  Thus, this Court, as the court possessing jurisdiction over the underlying controversy, has jurisdiction to determine this Motion.

### B.  Federal Arbitration Act

The FAA provides that once a defendant files a motion to compel arbitration, a district court must "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not" at issue, must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  It "reflects both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.'"  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  The district court's role in ruling on a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists[,] and if it does, (2) whether the agreement encompasses the dispute at issue."  *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020).  Only if the court answers both questions in the affirmative will the FAA require the Court "to enforce the terms of the arbitration agreement in accordance with its terms."  *Id.*  The Supreme Court has reminded that "courts should order arbitration of a dispute only where the court is satisfied that neither [1] the formation of the parties' arbitration agreement *nor* [2] (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or

---

[7]      Although the TCPA refers to "an appropriate court of that State" without reference to the federal courts, in *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376 (2012), the Supreme Court held that "Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits."  It reasoned that "[b]ecause federal law creates the right of action and provides the rules of decision, [the plaintiff's] TCPA claim, in 28 U.S.C. § 1331's words, plainly 'arises under' the 'laws . . . of the United States.'"  *Id.* at 377, 387.

applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original).

In this case, Defendant argues that the Court should grant its Motion because (1) Plaintiff agreed to arbitrate; (2) Plaintiff's claims fall within the scope of the arbitration provision; (3) Defendant has standing to enforce the arbitration provision; and (4) Plaintiff's claims can only be arbitrated on an individual basis. Mot. at 15:2, 17:5, 18:6, 22:3. Plaintiff opposes the Motion by arguing that (1) the parties never entered into a binding arbitration agreement because Plaintiff never agreed to arbitrate his claims and (2) even if an enforceable contract existed, (a) Defendant waived its right to compel arbitration by waiting eighteen (18) months and engaging in litigation before asserting its alleged arbitration rights, (b) Plaintiff has grounds to revoke the agreement, and (c) the agreement requires the arbitrator to determine whether the class claims should be dismissed, not the Court. Oppo. at 6:3-12. In reply, Defendant argues that Plaintiff's arguments for why the Court should reject the arbitration agreement lack merit: First, Defendant notes that Plaintiff's claims he is not bound by the Card Agreement because he does not recall receiving it in the mail or making purchases on the card, but "the law is clear that a plaintiff cannot rebut evidence of a binding arbitration agreement simply by claiming he does not remember whether he entered it or not." Reply at 2:6-17. Second, Defendant asserts that Plaintiff's claim that arbitration is optional rather than mandatory misconstrues the plain language of the Card Agreement. *Id.* at 2:18-21. Third, Defendant argues that Plaintiff's contention that the Arbitration Provision is unconscionable plainly fails given the very same agreement has been enforced by numerous courts throughout the country. *Id.* at 2:22-25. Finally, Defendant contends that Plaintiff fails to establish the heavy burden of showing Defendant waived its right to arbitration. *Id.* at 3:1-7.

As discussed below, the Court finds the Card Agreement requires the parties to arbitrate the instant dispute.

### 1. *Governing Law*

As a preliminary matter, federal substantive law governs the scope of an arbitration

agreement.  *Kramer*, 705 F.3d at 1126.  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000).  State contract law, on the other hand, governs issues pertaining to the validity, revocability, and enforceability of an agreement to arbitrate.  *See Revitch*, 977 F.3d at 716-17.

Defendant contends the validity of the Arbitration Provision is governed by South Dakota law because every single Card Agreement includes a choice of law provision specifying the application of South Dakota law.  Mot. at 15:15; Reply at 2:25.  Plaintiff's Opposition does not dispute the application of South Dakota law, *see* Oppo. at 12:13-15, but nonetheless, relies on Ninth Circuit and California case law throughout most of the brief without specifying whether any of those cases applied South Dakota or California law, *see id.* at 13-21.

The Court finds application of South Dakota contract law appropriate in this case for three reasons: First, where a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.  *See, e.g.*, *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived.");  *see also* S.D. Cal. Civ. R. 7.1.  Here, Plaintiff failed to advance any argument against the application of South Dakota law, and as such, waived any argument to the contrary.  Second, the Card Agreement provides that "[f]ederal law and the law of South Dakota govern the terms and enforcement of this Agreement."  Card Agreement at 23.  Third, other courts ruling on motions to compel arbitration of the very same Citibank Card Agreement have also held South Dakota law applies to the determination of the validity of the Arbitration Provision.  *See, e.g.*, *Izett*, 2019 WL 4845575 at *9 (holding that "South Dakota law governs the enforceability of the

agreement" where "[t]he Citibank accounts at issue in this case extended from South Dakota, and Plaintiff does not contest that the application of South Dakota law is contrary to California policy"); *Garcia v. Citibank, N.A.*, No. CV 18-9413 PSG (SKX), 2019 WL 2902499, at \*3 (C.D. Cal. Feb. 13, 2019) (granting the motion to compel arbitration while applying South Dakota law to the Citibank Card Agreement "for the purposes of determining the validity of the new arbitration agreement" where the plaintiff never expressly disputed application of South Dakota law "but relie[d] on California authority throughout his opposition"); *see also In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig. (In re MCM II)*, No. 11-MD-2286-MMA-MDD, 2019 WL 398169, at \*4 (S.D. Cal. Jan. 31, 2019), *reconsideration denied,* No. 11MD2286-MMA (MDD), 2019 WL 1676015 (S.D. Cal. Apr. 17, 2019) (Anello, J.) (finding "South Dakota has a substantial relationship to this dispute and application of South Dakota law would not be contrary to any fundamental policy of California" where the Citibank "credit card agreements contain governing law provisions stating that '[f]ederal law and the law of South Dakota . . . govern").  Although the Ninth Circuit has held that district courts cannot rely exclusively on cases concluding that South Dakota law applies where those cases do not proceed through California's choice of law rules articulated in the Restatement (Second) of Conflict of Laws, § 187 and *Nedlloyd Lines B.V. v. Super. Crt.*, 3 Cal.4th 459 (1992), *Izett* and *In re MCM II* both proceeded through the requisite analysis and likewise still found application of South Dakota law appropriate.  *See, e.g.*, *Izett*, 2019 WL 4845575 at \*9 (applying the Restatement (Second) of Conflict of Laws, § 187 to determine "application of South Dakota law would not be contrary to any fundamental policy of California"); *In re MCM II*, 2019 WL 398169 at \*4 (same).

Thus, the Court applies federal substantive law to the scope of the Arbitration Agreement, and South Dakota contract law to the enforceability of the agreement itself.

### 2.   *Plaintiff's Evidentiary Objections Lack Merit, and the Card Agreement is Admissible.*

A district court ruling on a motion to compel arbitration must apply a "standard

similar to the summary judgment standard of Federal Rule of Civil Procedure 56." *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018) (Anello, J.) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  In that vein, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2).  However, the Court will consider the substance of evidence that would be admissible at trial even if the form of the evidence is improper so long as that same evidence may be admissible in another form.  *See, e.g.*, *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922-23 (D. Nev. 2019) (noting that "the 2010 amendments to Federal Rule of Civil Procedure 56 'eliminate[d] th[is] unequivocal requirement' and mandate only that the substance of the proffered evidence would be admissible at trial"; declining to "disregard all exhibits for lack of proper authentication because their substance could be admissible at trial").   Before     an item of evidence may be considered, Federal Rule of Evidence 901(a) requires a proper foundation be laid to authenticate the item by "evidence sufficient to support a finding that the item is what the proponent claims it is."  *See Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir. 1987).  Such a foundation may be laid by testimony of a witness who has personal knowledge.  FED. R. EVID. 901(b)(1).

Defendants rely on declarations from Mr. Peck, the custodian of records for Citibank, to authenticate the Card Agreements.  In order for Mr. Peck to authenticate such documents, he must be a "witness with knowledge . . . that [each Card Agreement] is what it is claimed to be."  FED. R. EVID. § 901(b)(1).  Plaintiff objects to Paragraphs 5, 6, 7, 8, 9, 10, 12, and 13 of the Peck Declaration as lacking foundation under Rule 602 of the Federal Rules of Evidence and improperly authenticated under Rule 901 of the Federal Rules of Evidence.  *See* ECF No. 30-3.  The Court finds Plaintiff's Evidentiary Objections unavailing.   Plaintiff argues that "[t]his information lacks foundation because the declaration does not properly lay foundation for how he has knowledge of the quality assurance controls and whether they were strictly adhered to in the normal course of

-21-

business." *Id.* at 2.  However, Mr. Peck's declaration, which is more detailed than most declarations frequently submitted to this Court, declares that (1) he is the Document Control Officer for Citibank, where he has been employed since August 27, 2007; (2) "[a]s a custodian of records, [he has] knowledge of, and access to, account information and records concerning the Citibank account of Sean Hatranft [sic]"; and (3) he has "personal knowledge of Citibank's regular business practices and procedures."  ECF No. 28-2 at 2, ¶¶ 3-4.  He also declares that "[t]he exhibits to this Declaration are true and correct business records created and maintained by Citibank or its affiliates, in the course of regularly conducted business activity."  *Id.*  Upon review, Mr. Peck's declaration, establishing his familiarity with Citibank's credit card records, demonstrate he is a qualified "witness with knowledge," who is familiar with Citibank's recordkeeping practices as they pertain to sending Card Agreements to customers.  *See* Peck Decl. ¶¶ 2-6; *see also Izett*, 2019 WL 4845575 at *3-5, 11 (accepting the same declaration from Mr. Peck as properly authenticating the Card Agreement while noting that a "qualified witness need only be familiar with the company's recordkeeping practices").

As Defendant points out, in *Izett*, the court disagreed with objections identical to the ones Plaintiff proffers in this case, finding, *inter alia*, that (1) Mr. Peck's nearly identical declaration properly authenticated the Card Agreement; (2) the Card Agreement was admissible and not hearsay; (3) even if the Card Agreement was not admissible as hearsay, it met the requirements for the business records exception to the hearsay rule; and (4) the plaintiff's statements in his declaration that he never saw the Card Agreement, received the Card Agreement, or agreed to be bound by its terms "failed to rebut the presumption that Citibank mailed him the Card Agreements" under the mailbox rule.  2019 WL 4845575 at *3-5, 11.

Thus, Plaintiff's Evidentiary Objections are **OVERRULED**.  *See also In re MCM II*, 2019 WL 398169 at *5 (finding "Citibank's custodian of records authenticated the credit card agreements); *Jallo v. Midland Funding, LLC*, No. 14-CV-352-BEN NLS, 2014 WL 5810203, at *2-3 (S.D. Cal. Nov. 6, 2014) (Benitez, J.) (holding that the Citibank

Cardholder Account and Security Agreement for the plaintiff's account, which Citibank had provided to the defendant, was "sufficiently authenticated pursuant to Rule 901, and [was] therefore admissible"). Mr. Peck's declaration sufficiently authenticates and lays the foundation for the Card Agreement.

### 3. *Plaintiff Signed a Valid Agreement to Arbitrate*

Section 2 of the FAA governs the enforcement of agreements to arbitrate and provides that a provision to settle by arbitration a controversy arising out of a contract covering a transaction involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also* 9 U.S.C. § 1 (defining "commerce" as "commerce among the several States"). The FAA's "savings clause" allows a party to challenge an arbitration agreement based on any state law contract defenses, such as fraud, mistake, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996).

Identical to California law,[8] under South Dakota law, the "[e]lements essential to existence of a contract are: (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) [s]ufficient cause or consideration." *Compare McNamara v. Yellow Transp., Inc.*, 570 F.3d 950, 956 (8th Cir. 2009) (citing S.D. Codified Laws § 53-1-2; *Mueller v. Cedar Shore Resort, Inc.*, 643 N.W.2d 56, 70 (S.D. 2002)) (applying South Dakota law) *with Grimes v. New Century Mortg. Corp.*, 340 F.3d 1007, 1011 (9th Cir. 2003) (McKeown, J., dissenting) (citing Cal. Civ. Code § 1550) (applying California law); *see also* Mot. at 15:15-19. Defendant argues that Plaintiff "cannot credibly claim that he was not capable of contracting, that the credit agreement was unlawful, or that the credit extended was insufficient consideration." Mot. at 15:19-21. Thus, he could only dispute consent. Indeed, Plaintiff's Opposition makes a point to note that he "never signed an

---

[8] Although South Dakota law applies, the Court compares California law throughout this order, given Plaintiff relied almost exclusively on California law in his Opposition, to show that even if California law applied, it would not change the outcome of this ruling.

updated cardholder agreement."[9]  Oppo. at 8:10 (citing Hartranft Decl. at ¶¶ 1-8).  He also argues the Arbitration Provision is unconscionable.  Oppo. at 13:20.  The Courts addresses both arguments in turn but finds neither carries the day.

a.    *The Arbitration Provision Is Not Unconscionable*

Plaintiff argues that "the arbitration agreement is both procedurally and substantively unconscionable and does not meet the standard set out in *Armendariz v. Foundation Health Psycare Services, Inc.*, 24 Cal. 4th 83, 113-14 (2000) like Defendant claims."  Oppo. at 14:24-27.  First, he contends that the Card Agreement is procedurally unconscionable because it is a contract of adhesion, and Plaintiff was never provided with any of the relevant arbitration rules by which the parties would be bound to abide.  *Id.* at 16:6-17:16; *but see Garcia*, 2019 WL 2902499 at *4 (noting that the plaintiff, like Plaintiff here, failed to cite any South Dakota law supporting the notion that an arbitration agreement is procedurally unconscionable because the arbitration rules were only referenced but not attached to the contract, and "even under California law, which Plaintiff relies on, his argument fails").  Second, he asserts that it is substantively unconscionable because it (1) has "no express provision for discovery," (2) has "a unilateral provision granting Defendant the unilateral choice to change the terms of the agreement at any time,"

---

[9]    A court may take judicial notice of the fact that a contract was signed.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (holding that a district court could take judicial notice of "the *fact* that [a   document]   was signed"), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Wilbur v. Locke*, 423 F.3d 1101, 1112 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (taking judicial notice of a consummated agreement in the form of an executed compact).  Here, without taking judicial notice of the validity of the Card Agreement, the Court takes judicial notice of the fact that the agreement is not a fully executed a contract as it is not signed by any of the parties but does explicitly provide that the "Agreement takes effect once you use your card" or "within 30 days after we sent you this agreement."  Card Agreement at 16.  It also contained a provision expressly allowing Plaintiff to reject the arbitration provision by sending a written rejection notice to the address provided in the agreement.  *Id.* at 23.  Here, Plaintiff used the credit card and never states that he sent a written notice of rejection to Citibank, Midland Funding, MCM, or Encore.  *See generally* Hartranft Decl.

1   (3) "the filing costs effectively make it impossible to pursue individual claims," (4) "caps

2   the amount of damages a Plaintiff may recover before incurring exorbitant costs," and (5)

3   contains so many unconscionable provisions that severance cannot save the Card

4   Agreement.   Oppo. at 17:17-20:15.   Defendant replies that "[m]ultiple courts have

5   compelled arbitration under Citibank cardholder agreements that are identical or similar to

6   Hartranft's, and in doing so[,] these courts have expressly rejected arguments that the

7   cardholder agreements are unconscionable."   Reply at 5:19-6:7 (citing cases).   Defendant

8   also points out that with respect to the costs, "the consumer is only required to pay a filing

9   fee of $200—half of the Court's filling fee."   *Id.* at 9:17-21.

10       Under both South Dakota and California law, a court may refuse to enforce a

11   provision of a contract if it finds the provision at issue "unconscionable at the time it was

12   made."  S.D. Codified Laws § 57A-2-302(1); Cal. Civ. Code § 1670.5(a).   Courts may

13   find a contract as a whole "or any clause of the contract" to be unconscionable.   S.D.

14   Codified Laws § 57A-2-302(1); Cal. Civ. Code § 1670.5(a).   Unconscionability represents

15   an issue of law appropriate for determination by the court.   *Dakota Style Foods, Inc. v.*

16   *SunOpta Grains & Foods, Inc.*, 329 F. Supp. 3d 794, 810 (D.S.D. 2018) (citing S.D.

17   Codified Laws § 57A-2-302(1); *Johnson v. John Deere*, 306 N.W.2d 231, 236 (S.D.

18   1981)).

19       California and "South Dakota law require[ ] a showing of both procedural and

20   substantive unconscionability to invalidate a contract."   *Compare Garcia*, 2019 WL

21   2902499 at *3 (citing *Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W.2d 184, 194-

22   95 (S.D. 2007)) *with Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023-28 (9th Cir. 2016)

23   (noting that California law also requires both procedural and substantive unconscionability

24   for a clause to be unenforceable although both elements "need not be present to the same

25   degree").   Procedural unconscionability focuses on whether the contracting parties had a

26   meaningful choice, *Johnson*, 306 N.W.2d at 237, or were the victims "of oppression or

27   surprise due to unequal bargaining power," *Tompkins*, 840 F.3d at 1023-28.   Substantive

28   unconscionability focuses "on overly harsh or one-sided terms."   *Johnson*, 306 N.W.2d

-25-

237; *Tompkins*, 840 F.3d at 1023-28.

In the present case, Plaintiff argues that the Arbitration Provision is unconscionable. Although both parties spill significant ink over whether the Card Agreement is unconscionable, *see* Oppo. at 13-20; Reply at 5-9, the Card Agreement is not unique and has been subject to scrutiny from courts throughout the country. *See, e.g.*, *Ranginwala v. Citibank, N.A.*, No. 18-CV-14896, 2020 WL 6817508, at *6 (D.N.J. Nov. 19, 2020) (noting that "several other courts have upheld and enforced arbitration provisions containing similar or identical language to the Arbitration Agreement currently before the Court"); *see also Ahmetasevic v. Citibank, N.A.*, No. CV 19-5707, 2020 WL 5146124, at *3 n.3, 7 (E.D. Pa. Aug. 31, 2020) (granting a defendant's motion to compel arbitration and stay claims while noting that Citibank had asserted "that 'numerous courts have enforced Citibank's arbitration provision containing similar (if not identical) language to the provision currently before the Court'") (citing cases); *Cunningham v. Citigroup, Inc.*, No. CIV. 05-3476 (SRC), 2005 WL 3454312, at *1-2 (D.N.J. Dec. 16, 2005) ("Since the Agreement is a standard form that is widely used by Citi Defendants in their business dealings, this is not the first time the terms of the Agreement have been the subject of litigation," and "[a]rbitration agreements by Citi Defendants similar to the one at issue here have been upheld and enforced by numerous other courts").  Accordingly, the Court sees no need to address Plaintiff's various arguments one by one as to why or how the Arbitration Agreement is unconscionable given the very same Arbitration Provision in the Citibank Card Agreement has been upheld by many courts in the face of similar arguments of unconscionability. *See, e.g.*, *Lebovits v. Cavalry Portfolio Servs., LLC*, No. 20-CV-01116 (KMK), 2021 WL 1198967, at *1, 8 (S.D.N.Y. Mar. 29, 2021) (granting the defendants' motion to compel arbitration where "[o]n September 8, 2016, Plaintiff was sent a credit card agreement . . . by Citibank," which was "governed by federal and South Dakota law" and contained the same arbitration provision); *Ranginwala*, 2020 WL 6817508 at *1-2, 6-7 (granting the defendant's motion to compel arbitration in a case involving an arbitration provision in a Citibank Card Agreement with identical language

-26-

while noting that the "[p]laintiff ha[d] not demonstrated that the arbitration provision [was] unconscionable under South Dakota law"); *Garcia*, 2019 WL 2902499 at *5-6 (granting the motion to compel as "Plaintiff has failed to establish that the new arbitration agreement is either procedurally or substantively unconscionable," and thus, the arbitration agreement was enforceable considering the plaintiff never disputed his claims were covered by the agreement); *Samenow v. Citicorp Credit Servs., Inc.*, 253 F. Supp. 3d 197, 209 (D.D.C. 2017) (granting the defendant's motion to compel arbitration under Citibank's Card Agreement and because none of the "well-settled principles of unconscionability" warranted "a finding of substantive or procedural unconscionability with respect to the Arbitration Agreements embodied in the Card Agreements"); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1176-77 (N.D. Cal. 2012) (granting the defendants' motion to compel arbitration where the plaintiff argued that a 2010 Citibank card agreement's arbitration clause was procedurally and substantively unconscionable under California law, but "South Dakota and federal law govern[ed] the parties' agreements").

Thus, the Court finds the Arbitration Provision is plainly not unconscionable.

b.    *The Parties Mutually Consented to Arbitration*

Defendant argues that "[u]nder South Dakota law, a signature is not required" for the Court to enforce the Card Agreement. Mot. at 15:23-24. "Instead, the consumer accepts the credit card agreement by using the card." *Id.* at 15:24-25. Here, Plaintiff "was notified that using the card would bind him to the agreement," but nonetheless, "[h]e used the card between August 10 and September 9, 2016." *Id.* at 16:17-20. Plaintiff opposes by arguing that he never agreed to send his claims to arbitration. Oppo. at 9:14. Defendant replies that "it is well settled that a plaintiff cannot avoid arbitration simply by claiming he does not remember receiving or accepting the arbitration agreement." Reply at 4:11-12.

"To form a contract, there must be a meeting of the minds or mutual assent on all essential terms." *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010) (quoting *Jacobson v. Gulbransen,* 623 N.W.2d 84, 90 (S.D. 2001)). "Consent of the parties to a contract must be: (1) [f]ree; (2) [m]utual; and (3) [c]ommunicated by each to the other."

S.D. Codified Laws § 53-3-1; *see also* CAL. CIV. CODE § 156. "The existence of mutual consent is determined by considering the parties' words and actions." *Am. Prairie*, 594 F.3d at 1034 (citing *Vander Heide v. Boke Ranch, Inc.,* 736 N.W.2d 824, 832 (S.D. 2007)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, "[w]hile the FAA 'requires a writing, it does not require that the writing be signed by the parties.'" *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439-40 (9th Cir. 1994).

South Dakota contract law provides that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." S.D. Codified Laws § 53-3-5; *see also* S.D. Codified Laws § 53-7-4 ("Consent can be communicated with effect only by some act or omission of the party contracting, . . . which necessarily tends to such communication."); S.D. Codified Laws § 53-7-7 (providing that "acceptance of the consideration offered with a proposal is an acceptance of the proposal"). In fact, the South Dakota Codified Laws contain a specific provision governing acceptance of credit card agreements, which provides: "The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card." S.D. Codified Laws § 54-11-9; *see also* CAL. CODE. CIV. PROC. § 1747.02(b) (defining an "accepted credit card" as "any credit card that the cardholder has requested or applied for and received or . . . has used . . . for the purpose of obtaining money, property, labor, or services on credit").

In *Quiroz v. Cavalry SPV I, LLC*, 217 F. Supp. 3d 1130, 1135-36 (C.D. Cal. 2016), the plaintiff, like Plaintiff here, argued that he "[did] not think" that he signed an application and "did not receive the Card Agreement." *Id.* at 1135. The court found these contentions "insufficient to refute the undisputed evidence before the Court." *Id.* Such

"undisputed evidence establishe[d] that Quiroz entered into an enforceable agreement to arbitrate" where his card agreement expressly provided that the plaintiff would agree to the agreement's terms when he started using the account. 217 F. Supp. 3d at 1135. There was "no dispute that Quiroz opened the account, used it to finance dental work for his wife, was mailed the Card Agreement, received billing statements, and made payments on the account in response to those billing statements." *Id.* Thus, because his "signature was not required for him to accept the Card Agreement" through Synchrony Bank, he agreed to arbitrate his claims. *Id.* at 1135-36.

Like the *Quiroz* plaintiff, Plaintiff does not dispute receiving the Card Agreement but claims he does not recall receiving it, agreeing to arbitration, or using the card. Hartranft Decl. at 2, ¶ 7. However, this Court, like the *Quiroz* court, finds that Plaintiff agreed to arbitrate by failing to rebut the evidence that he (1) received the Card Agreement and (2) used his card following receipt of the new terms. *Compare generally* Hartranft Decl. (failing to state that he never received the Card Agreement or Card or that he never used the card) *with Izett*, 2019 WL 4845575 at *6 (rejecting a plaintiff's similar arguments that he did not recall receiving the same Card Agreement Guide from Citibank because Mr. Peck's nearly identical declaration provided credible evidence that the document had been mailed, and therefore, received).

Although *Quiroz* involved a different bank's card agreement, numerous courts facing the same Citibank Card Agreement have enforced it despite the fact that the plaintiff and party objecting to arbitration never signed the agreement. *See, e.g.*, *In re MCM II*, 2019 WL 398169 at *5 (noting that the "[p]laintiffs concede[d] that they entered into valid agreements to arbitrate with Citibank by using their credit card accounts," and as a result, "valid agreements to arbitrate exist[ed] between Plaintiffs and Citibank because Defendants provided account statements for both Plaintiffs, evincing their use of their credit card accounts") (citing S.D. Codified Laws § 54-11-19 (1983)); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1198–99 (S.D. Cal. 2013) (Anello, J.) (finding that the plaintiff "ostensibly agreed to arbitrate claims associated with her accounts when she

continued to use each credit account after receiving cardmember agreements" while noting that "under South Dakota law, such continued use of a credit card account may constitute assent to arbitration") (citing S.D. Codified Laws § 54-11-10); *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG PLAX, 2012 WL 7683512, at *6 (C.D. Cal. Feb. 24, 2012) ("Applying South Dakota law, the Court finds that Plaintiff entered into the arbitration agreement when he was mailed the 2001 Change-in-Terms, failed to take advantage of the optout provision, and continued to use the card.") (citing S.D. Codified Laws § 54-11-10).

In this case, as part of his argument that there is no valid agreement to arbitrate, Plaintiff advances three arguments: First, Plaintiff argues that "the language in the arbitration is not unequivocal as it states that claims 'may' be sent to arbitration." Oppo. at 10:8-9. He contends that "[t]his illusory language, given its plain meaning, would not lead a reasonable person to believe they were agreeing to arbitrate their claims and waive the right to a jury and to pursue their class claims." *Id.* at 10:9-11. The Court finds this argument unavailing. The sentence of the Arbitration Provision defining "Covered claims," provides: "You or we **may** arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account, or our relationship (called 'Claims')." Card Agreement at 22 (emphasis added). However, the very next sentence states, "If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim." *Id.* Thus, while either party has the option of electing arbitration, once any party does so, the other party loses "the right to litigate." *See id.*

Second, Plaintiff argues that he "never legally consented or agreed to the revised cardholder agreement with Citibank which included the arbitration clause," and thus, "there is no agreement, or meeting of minds." Oppo. at 10:14-18. He contends that even though "Defendant claims to have unilaterally notified Plaintiff by sending an updated cardholder agreement with the new Citibank Costco Anywhere card," Defendant "cannot establish Plaintiff received, read and understood the agreement and all of its terms." Oppo. at 10:19-

21.  However, neither South Dakota nor California law requires proof that a party read or understood an agreement the party accepted in order for the agreement to bind that party. *See, e.g.*, *Schwalm v. TCF Nat'l Bank*, 226 F. Supp. 3d 937, 942 (D.S.D. 2016) ("In South Dakota, there is a presumption that a party to an agreement reads and understands the contents of what she signs.") (citing *Farlow v. Chambers*, 21 S.D. 128, 110 N.W. 94 (1907)); *Conyer v. Hula Media Servs., LLC*, 53 Cal. App. 5th 1189, 1197 (2020), *review filed* (Oct. 5, 2020) (noting that "[i]t has long been the rule in California that a party is bound by a contract even if he did not read the contract before signing it").  Plaintiff also cites to *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 126-129 (2d. Cir. 2012) to argue that even if Defendant established that it had sent the Card Agreement, "this does not establish an unequivocal agreement by the parties of the arbitration provision."  Oppo. at 10:22-28.  However, not only is *Schnabel* not binding on this Court, but given it is a Second Circuit case applying the law of either Connecticut or California when this case involves the application of South Dakota law, it is also inapposite.  Further, *Schnabel* involved an arbitration provision that "was both temporally and spatially decoupled from the plaintiffs' enrollment in and use of" an online service given it was "delivered after initial enrollment" so that "the plaintiffs would not be forced to confront the terms while enrolling in or using the service."  *Id.* at 126.  Here, on the other hand, Citibank sent Plaintiff the Arbitration Provision before he ever used the card; cautioned him that he would be accepting the Card Agreement, including the Arbitration Provision, by using the card; and even gave him the opportunity to opt out of the Arbitration Provision, which he never did.  *See* Exhibit "2" to Peck Decl. at 10, 16, and 22.

Third, Plaintiff argues that "Defendant cannot establish that Mr. Hartranft indeed made the purchases, which Defendant's claim bound him to the new agreement with the arbitration clause."  Oppo. at 11:3-4.  He states that "[i]t could have been the result of another person using the card and it is Defendant's burden to prove before this Court."  *Id.* at 11:5-6.  Defendant replies that Plaintiff's "suggestion that he may not have made the purchases reflected on his September 2016 Citibank account statement is implausible"

-31-

given "[m]ost of the charges were in Tustin, California, where he lives."  Reply at 5:1-3 (citing Exhibit "3" to Peck Decl. at 24-25).  Defendant also points out that "[t]here is no evidence that Hartranft disputed the charges, reported identity theft, or took any of the actions one would take after receiving a bill with unexpected charges."  *Id.* at 5:4-5.  The Court agrees that while Plaintiff's counsel makes the attorney argument that the charges could have resulted from theft, if that were the case, Plaintiff would have mentioned the theft of his card in his declaration but never did.  *See generally* Hartranft Decl.

Given no other elements essential to contract formation were raised by Plaintiff and the Court finds mutual consent existed, the Card Agreement and Arbitration Provision contained within it are both valid, enforceable contracts.

### 4.   ***The Arbitration Provision Covers the TCPA and FDCPA Claims***

Defendant argues that Plaintiff's "claims that Encore violated the TCPA and FDCPA when collecting his account after he defaulted fall squarely within the arbitration provision."  Mot. at 17:13-14.  Plaintiff's Opposition does not dispute this.  *See generally* Oppo.  Indeed, the Arbitration Provision provides that it covers "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account, or our relationship."  Card Agreement at 22.  It elaborates on its broad application:

> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; . . . Claims made regarding past, present, or future conduct; and Claims made independently or with other claims.

Card Agreement at 22.

Thus, the Arbitration Provision covers Plaintiff's TCPA and FDCPA claims at issue in this case.  *See, e.g.*, *Cayanan*, 928 F. Supp. 2d at 1208 (granting the defendants' motion to compel arbitration of the plaintiffs' TCPA claims because the "[d]efendants' alleged conduct in this case is directly related to Plaintiffs' accounts and the contracts that govern them"); *see also Thomas v. Wells Fargo Dealer Servs.*, No. CV135168RGKPJWX, 2013

-32-

WL 12114768, at *1-2 (C.D. Cal. Oct. 1, 2013) (granting the defendant's motion to compel arbitration by finding that the "[p]laintiff's claims [alleging violations of the TCPA and FDCPA] fall within the scope of the Arbitration Clause" given they "arise under two federal statutes and at tort," all of which "fall within the scope of the Arbitration Clause").

a.   *Plaintiff's Claim Involves Interstate Commerce*

Finally, for the Court to compel arbitration under the FAA, Plaintiff's TCPA and FDCPA claims must pertain to interstate commerce.   Subject to certain exceptions inapplicable here, the FAA "governs arbitration agreements in contracts involving interstate commerce." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058-60 (9th Cir. 2020) (applying Arizona contract law).   Section 1 of the FAA defines "commerce" as "commerce among the several States."   9 U.S.C. § 1.

Other courts have found that claims involving the TCPA and FDCPA involve interstate commerce. *See, e.g.*, *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1136 (N.D. Cal. 2013) (noting that "[t]he FDCPA defines the term 'debt collector' to include: (1) 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,' and (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another'") (citing 15 U.S.C. § 1692a(6)); *Colletti v. Monitronics Int'l, Inc.*, No. 0:15-4838-TLW, 2016 WL 11563370, at *3 (D.S.C. Aug. 4, 2016) ("In the instant case, the parties agree that . . . the TCPA claim in this case touches interstate commerce").   For example, in *Hamby* v. *Power Toyota Irvine,* No. 11CV0544-BTM (BGS), 2012 WL 13036860, *1-2 (S.D. Cal. Mar. 22, 2012) (Moskowitz, J.), another court in this district held that a retail sales contract for the purchase and financing of an automobile affected interstate commerce and granted the defendant's motion to compel arbitration.   The *Hamby* plaintiff filed suit, alleging violations of, *inter alia*, the FDCPA, arising out of the extension of credit from a car dealership in connection with the sale of a vehicle. *Id.* at *1.   Like Plaintiff here, the plaintiff alleged that "one or more adverse actions were taken regarding his credit application." *Id.*   Like Defendant, the defendant moved to

-33-

compel arbitration. *Id.* at *1-2. The court cited to the Supreme Court case of *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003), which made clear that "[n]o elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause." *Hamby*, 2012 WL 13036860, at *6. The *Hamby* court reasoned that because commercial lending necessarily included automobile lending, the agreement at issue in that case involved interstate commerce. *Id.*

Just as the *Hamby* court determined that commercial lending involved interstate commerce and encompassed the plaintiff's claims, 2012 WL 13036860, *1-2, this Court likewise concludes that this case involves interstate commerce, such that the Court must enforce the Card Agreement's Arbitration Provision.

### 5. *Waiver*

The Arbitration Provision provides that "[n]either you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit." Card Agreement at 22. Nonetheless, Plaintiff argues that "[e]ven if a contract was formed, Defendant has prejudicially delayed the bringing of this motion to compel arbitration, after a year and a half of litigation, and should be equitably barred from compelling arbitration." Oppo. at 11:10-12. Plaintiff contends that Defendant "fully invoked litigation machinery going to the merits of the claims by filing a motion to dismiss or stay before notifying counsel of the existence of an alleged enforceable arbitration clause." *Id.* at 12:26-28. He elaborates that "Defendant waited 18 months from the filing of the initial complaint to move the court to compel arbitration and took intervening steps by entering into a protective order and filing the Rule 26(f) initial disclosures." *Id.* at 13:1-3. Defendant replies that "[e]ven a cursory examination of the record shows that [Plaintiff's] contention to be flat-out wrong." Reply at 10:2-3. Defendant argues that "[t]he only motion Encore filed was a motion to stay or dismiss Hartranft's case because it was duplicative of another putative class action pending before Judge Anello," which "did not raise any merits issues." *Id.* at 10:4-6. Defendant points out that "[f]iling a motion to

-34-

dismiss that does not address the merits does not waive arbitration." *Id.* at 10:6-7 (citing cases). Defendant also responds that Plaintiff has not shown any prejudice resulting from the timing of Defendant's Motion, and even though Encore provided initial disclosures and signed a protective order, "that type of minimal participation does not waive arbitration." Reply at 10:25-11:6 (citing *Armstrong*, 2018 WL 6505997 at *13 ("Courts have consistently held that minimal discovery—like the three interrogatories and 28 pages of produced documents here—does not constitute prejudice")).

A party seeking to compel arbitration may waive that right, although such waivers are rarely found in light of judicial policy favoring arbitration. *Tjeerdsma v. Global Steel Buildings, Inc.*, 466 N.W.2d 643, 645 (S.D. 1991); *see also Izett*, 2019 WL 4845575 at *10-11 (citing *Tjeerdsma*); *United States v. Park Place Assocs.,* 563 F.3d 907, 921 (9th Cir. 2009). "A party may be found to have waived its right to arbitration if it: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (internal quotation marks omitted); *see also United States v. Park Place Assocs.,* 563 F.3d 907, 921 (9th Cir. 2009). As to the first factor, neither party disputes that Defendant knew of its right to arbitrate. *See generally* Mot.; Oppo. Thus, the Court examines the remaining two factors of inconsistent acts and prejudice.

With respect to the second factor, "[a] party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Donelson v. Ameriprise Fin. Servs., Inc.*, No. 19-3691, 2021 WL 2231396, at *3 (8th Cir. Jun. 3, 2021) (quoting *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007)); *see also Izett*, 2019 WL 4845575 at *10-11. "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Donelson*, 2021 WL 2231396 at *3 (holding that filing a motion to strike class allegations filed at the same time the defendant moved to compel arbitration did not qualify as substantially invoking the litigation machinery). As

another example, asking a court to dispose of a case on the merits before reaching arbitration qualifies as inconsistent with arbitration and "substantially invoking the litigation machinery." *Id.* For example, in *Lewallen*, the Eighth Circuit found that the defendants had acted inconsistently with their arbitration right by serving "extensive" discovery requests, filing "substantive motions in the case," and participating in hearings on its proof of claim prior to seeking arbitration. 487 F.3d at 1090. In *Izett*, 2019 WL 4845575 at *10-11, however, the court determined that the defendants had not waived their right to arbitrate by litigating in the state court for recovery of a debt involved in a separate and distinct lawsuit brought by the plaintiff under the FDCPA. The court also determined that such actions in no way prejudiced the plaintiff. *Id.*

In this case, Defendant has filed only one other motion, and as of December 11, 2019, when it filed this motion, "[n]o discovery ha[d] taken place." Mot. at 13:2. The other motion Defendant filed was filed on October 11, 2018, and sought a dismissal or stay of the case on the basis that it was duplicative of the MDL case, rather than asserting any merits reasons for dismissal. *See* ECF No. 13 at 2. On July 19, 2019, the Court denied this motion as moot due to the filing of the SAC given the motion had been targeted at the previous complaint. ECF No. 24. The only other motion filed by Defendant was the instant Motion, seeking to compel arbitration and simultaneously asking the Court to strike the class allegations, on December 11, 2019. ECF No. 28. From July 30, 2020 to the present, the case has been stayed, at Plaintiff's request. ECF No. 46. Thus, unlike *Lewallen*, there has not been extensive discovery, filing of substantive motions, or participation in merits hearings. 487 F.3d at 1090. Rather, the Court finds Defendant has not acted inconsistently with its right to arbitration by "substantially invoking the litigation machinery."

As to the third factor pertaining to prejudice, "[p]rejudice may also result from lost evidence, duplication of efforts, or the use of discovery methods unavailable in arbitration." *Midwest AG Enterprises v. Poet Invs.*, No. CIV 08-4091, 2010 WL 2332717, at *16-17 (D.S.D. June 9, 2010) (applying South Dakota law). For example, in *Midwest*, the Court held that the defendants had waived the right to arbitration, and the plaintiff would be

-36-

prejudiced where the defendants never alleged the existence of an arbitration clause in their reply brief and "did not raise their arbitration claim" until filing a motion for summary judgment. *Id.* at *17. The court also noted that the parties had completed extensive discovery, allowing arbitration would require duplication of discovery that had already been completed, and the case had been set for trial. *Id.*

Unlike in *Midwest*, in this case, as of December 11, 2019, no discovery had taken place in this case, and no trial date has been set. *See* Mot. at 13:2-3. Further, no other major motions have been filed. Thus, the Court finds that Plaintiff will suffer no prejudice if the Court grants the instant Motion and compels arbitration.

In sum, Defendant has not waived its right to arbitrate Plaintiff's claims.

### C.   Defendant's Motion to Strike the Classwide Allegations

The Arbitration Provision expressly provides that "[c]laims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis." Card Agreement at 22. It elaborates that "[i]f arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action." *Id.*

Defendant argues that "[b]y using his account and accepting the cardholder agreement, Hartranft also waived his right to proceed as a class representative or class member." Mot. at 22:4-5 (citing Peck Decl. at 19). Defendant also points out that "because Hartranft failed to file a class certification motion by the deadline set by the Court, he cannot represent a class even if he is allowed to litigate his claims in this Court." *Id.* at 23:8-10 (internal citations omitted). Thus, Defendant contends that "[b]ecause Hartranft waived his right to proceed on a class-wide basis, both by accepting the arbitration agreement and by failing to move for class certification by the deadline, the Court should, in addition to compelling arbitration of Hartranft's individual claim, also strike the allegations regarding the putative class." *Id.* at 23:11-14. Plaintiff responds that the Court should deny Defendant's Motion to Strike the Classwide Allegations because "it is for the arbitrator, not the court, to determine whether the arbitration clause permits or prohibits

consolidation."  Oppo. at 20:23-24.  Thus, he contends that "even if the Court grants the motion, the Court must defer the gateway issue of class arbitration to the arbitrator."  *Id.* at 20:27-21:1.  Defendant replies that the Court should reject Plaintiff's argument that the arbitrator should determine whether the case can proceed as a class action because the Card Agreement expressly prohibits class arbitration.  Reply at 11:12-15.  In fact, it even states that "[t]he arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis."  *Id.* at 11:17-19; *see also* Card Agreement at 22.  Defendant also states that "[t]he cases Hartranft cites are inapposite because they are cases where the arbitration provision was silent as to the availability of class arbitration."  Reply at 11:19-21.

Although this case was filed as a putative class action, Plaintiff did not seek class certification, and as such, the Court did not certify the class.  Therefore, with no certified class claims having come into existence, any dismissal would not affect putative class members' claims.  *See Richey v. GetWellNetwork, Inc.*, No. 320CV02205BENBLM, 2021 WL 424281, at *3 (S.D. Cal. Feb. 8, 2021); *see also Lee v. CVS Pharmacy, Inc.*, No. 320CV01923BENDEB, 2021 WL 308283, at *2-3 (S.D. Cal. Jan. 28, 2021) (denying a Joint Motion to dismiss putative class claims because "[a]lthough this case was filed as a putative class action, Plaintiff did not seek class certification, and as such, the Court did not certify the class," meaning that "with no certified class claims having come into existence, any dismissal will not affect putative class members' claims").  "Generally, courts review class allegations through a motion for class certification."  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007); *see also Ernst v. Bank of Am. Corp.*, No. 12CV1255 JM(BGS), 2012 WL 5682052, at *6 (S.D. Cal. Oct. 30, 2012) (Miller, J.) (denying a motion to strike or dismiss the class allegations as moot while instructing the plaintiff to move for class certification within ninety days of the order's entry); *Kas v. Mercedes-Benz USA, LLC*, No. CV 11-1032-GHK PJWX, 2011 WL 5248299, at *3 (C.D. Cal. Oct. 31, 2011) ("While class allegations can be stricken at the pleadings stage, it is 'rare to do so' before a motion for class certification has been filed.").

Consequently, courts disfavor motions to strike classwide allegations filed at the pleading stage or before the plaintiff has had the opportunity to file a motion for class certification. *See, e.g.*, *Wal-Mart*, 505 F. Supp. 2d at 615 (noting that "the granting of motions to dismiss class allegations before discovery has commenced is rare," as "the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery'").  In this case, however, the Court's September 20, 2018 Scheduling Order set the deadline to file a motion for class certification as April 22, 2019, which was well before the Court stayed the case on January 7, 2020.  ECF No. 12 at 4, ¶ 9.  Thus, Plaintiff had the opportunity to file a motion for class certification but never did.

Numerous cases have either granted motions to strike class allegations or denied such motions as moot where the Court has granted a motion to compel arbitration.  *See, e.g.*, *Donelson*, 2021 WL 2231396 at *1 (reversing and remanding to the district for entry of an order striking the class-action allegations and compelling arbitration); *Kaltwasser v. AT & T Mobility LLC*, 812 F. Supp. 2d 1042, 1051-52 (N.D. Cal. 2011) (granting the defendant's motion to compel arbitration while terminating the defendant's motion to strike class allegations as moot); *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963-64 n.10 (9th Cir. 2007) (compelling arbitration of the plaintiff's individual claims while dismissing the plaintiff's class allegations as moot).  Other courts have compelled arbitration where a case had been filed as a putative class action, but the plaintiff never moved for class certification, and the Citibank Card Agreement prohibited arbitration of class claims, without explicitly addressing the putative class claims that never came into existence.  *See, e.g.*, *Cayanan*, 928 F. Supp. 2d at 1208 (compelling arbitration of a plaintiffs' claims where they brought a putative class action for TCPA violations against, *inter alia*, Citibank, but the agreement between the parties, like the Card Agreement in this case, contained a prohibition against arbitrating class actions).

Although this case was filed as a putative class action, Plaintiff did not seek class certification, and as such, the Court did not certify the class.  Therefore, with no certified class claims having come into existence, any dismissal would not affect putative class

members' claims.  *See Richey*, 2021 WL 424281 at *3.  The only claims currently alive in this case are Plaintiff's individual claims.  *See id.*  Thus, the Court **DENIES** Defendant's Motion to Strike the Class Allegations as moot.

### D. <u>Defendant's Motion to Dismiss, or in the Alternative, Stay the Case</u>

Defendant argues that "[b]ecause Hartranft's claim is within the arbitration provision's scope, proceedings on his complaint should be dismissed or stayed pending the arbitration's conclusion."  Mot. at 23:25-28 (citing 28 U.S.C. § 3).  That being said, Defendant contends that "[t]he Ninth Circuit has explained that a stay is preferable to a dismissal, because the latter is immediately appealable and could therefore undermine the efficiency arbitration is meant to provide."  *Id.* at 24:5-9 (citing *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 n.1 (9th Cir. 2004) (noting that "[c]ourts should be aware that a dismissal renders an order appealable under § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under 16(b) . . . . Unnecessary delay of the arbitral process through appellate review is disfavored").

"[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration."  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638, 641 (9th Cir. 1988) (affirming the district court's dismissal of one the plaintiff's claims because the parties agreed to submit those claims to arbitration, and no nonarbitrable claims remained in the case); *Gadomski*, 281 F. Supp. 3d at 1020-21 (holding that "because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration"). "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  However, in determining this motion to compel arbitration, the Court also faces a co-pending motion to dismiss, and courts may examine merits on a motion to dismiss.

Where a defendant moving to compel arbitration also seeks dismissal of the case

-40-

pursuant to Rule 12(b)(1), the "jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving party "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a factual attack, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Further, in a motion to dismiss, the Court must construe all reasonable inferences in favor of the nonmoving party, *Manzarek*, 519 F.3d at 1031, but has no obligation to draw unreasonable inferences when determining whether the pleading under attack states a plausible claim, *see, e.g.*, *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-CV-01858-EMC, 2020 WL 4923697, at *3 (N.D. Cal. Aug. 21, 2020), *motion to certify appeal denied,* No. 20-CV-01858-EMC, 2020 WL 7227153 (N.D. Cal. Dec. 8, 2020) ("When a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*."). If a defendant advances "a factual attack on subject matter jurisdiction, the defendant may introduce testimony, affidavits, or other evidence to dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (internal quotations omitted). "Under these circumstances, 'no presumptive truthfulness attaches to plaintiff's allegations.'" *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039.

The Court construes Defendant's request for a dismissal as a factual attack. Plaintiff asserts TCPA violations against Encore for unwanted calls received from the numbers (800) 888-9419 and (877) 445-4581, *see* SAC at 4, ¶ 16, but Encore has submitted evidence that it does not collect debts, *see* Swaninger Decl. at 2, ¶ 4, and other cases alleging TCPA

violations related to calls from the number (800) 888-9419 show that the number belongs to MCM, *see Franklin v. Atlantic Credit & Finance, Inc., et al.*, No. 119CV03696LMMAJB, 2020 WL 10046092, at *2 (N.D. Ga. Apr. 20, 2020) ("This letter is to inform you that Midland Funding, LLC is considering forwarding this account to an attorney in your state for possible litigation. Upon receipt of this notice, please call 800-888-9419."); *Cooper v. Atl. Credit & Fin. Inc.*, No. 2:18-CV-01254-JHE, 2019 WL 2076397, at *3 (N.D. Ala. May 10, 2019), *vacated and remanded on other grounds sub nom. Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951 (11th Cir. 2020) (same). Further, the Card Agreement had a section entitled "COMMUNICATIONS," which stated, "You agree that we (and/or our service providers or anyone we authorize) may contact you at any phone number, email address, or mailing address you provide or we obtain in other ways," which "includes communications to mobile, cellular/wireless, or similar devices . . . by live operator, auto-dialer, recorded or artificial voice, text, or email." Card Agreement at 22. The TCPA's definition for violations falling within its scope, however, expressly exclude claims for calls "made with the prior express consent of the called party." *See, e.g.*, 47 U.S.C. § 227(b)(1)(A) (making it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . . to make any call (other than a call . . . **made with the prior express consent of the called party**) using any automatic telephone dialing system or an artificial or prerecorded voice") (emphasis added). By using the Costco Card, Plaintiff consented to the terms of the Card Agreement, including that Citibank, its assignees, or those assignees' subsidiaries or parent companies, like Defendant, could call him. This flies in the face of Plaintiff's allegation that he "did not provide Defendant with a 'prior express consent' nor written consent to receive calls to his cellular telephone." SAC at 4, ¶ 15. Thus, the Court may disbelieve that allegation. *Cisco*, 2020 WL 4923697 at *3.

As to the FDCPA violations, Plaintiff claims that Defendant "failed to provide Plaintiff the required notice pursuant to 15 U.S.C. § 1692g(a)." SAC at 10, ¶ 47. The FDCPA requires that "[w]ithin five days after the initial communication with a consumer

in connection with the collection of any debt, a debt collector shall, unless the . . . information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" various information outlined in the statute. 15 U.S.C. § 1692g(a).   However, Plaintiff does not allege any facts indicating that Defendant failed to send him written notice.   *See generally* SAC.   As a result, the Court finds that under the facts pled, as well as the documents upon which Plaintiff's TCPA and FDCPA claims are based, which are incorporated by reference, not only are Plaintiff's claims implausible under the law, but they are also appropriate for dismissal in light of the Court's decision to grant Defendant's Motion to Compel Arbitration.   As a matter of law, the Complaint, when considered along with the Card Agreement and briefs submitted herewith, fails to state a plausible claim for relief.   The Card Agreement allowed Defendant to pursue Plaintiff after he failed to pay amounts owed.   *See generally* Card Agreement. The Court disregards as unreasonable and implausible Plaintiff's allegation that any calls he received related to amounts unpaid arising out of his Costco card were unlawful in light of the Card Agreement, which expressly authorized Citibank or its assignees to call Plaintiff once Plaintiff accepted the Card Agreement by using the card.   *Id.*   When disregarding this allegation, the remaining facts show that Plaintiff (1) used a credit card from Citibank, which later assigned its rights to Defendant's subsidiary; (2) failed to pay balances owed on the card; and (3) was called regarding amounts he owed, as authorized by the Card Agreement.   As a matter of law, this made Defendant Plaintiff's creditor, and as a creditor, Defendant had every right to call him so long as the calls were consistent with the FDCPA.   Plaintiff's complaint does not plead sufficient facts to show the calls made were inconsistent with the FDCPA as it contains nothing more than one conclusory allegation that Defendant violated the FDCPA bereft of any supporting facts.   *See Twombly*, 550 U.S. at 570.

Having decided that all of Plaintiff's claims are subject to arbitration, the Court is within its discretion to dismiss the complaint under Rule 12 of the Federal Rules of Civil Procedure.   *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060

-43-

(9th Cir. 2004).   Consequently, because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration.   *See Delgado v. Ally Fin., Inc.*, No. 317CV02189BENJMA, 2018 WL 2128661, at \*6 (S.D. Cal. May 8, 2018) (Benitez, J.) (dismissing claims with prejudice after granting a motion to compel arbitration).   In the absence of a plausible claim under the TCPA and FDCPA, Plaintiff's factual allegations against Defendant lack a federal authorizing statute sufficient to invoke federal jurisdiction of her claim.   *See, e.g.*, *Terenkian*, 694 F.3d at 1139 (dismissing the case for lack of federal subject matter jurisdiction after a factual attack on the truth of the allegations creating the basis for federal jurisdiction).   Although absent an arbitrable issue, the Court would have discretion to grant leave to amend, the Court finds leave to amend would be improper here because (1) the Court simultaneously concludes that the arbitrator can determine the remaining issues and (2) permitting leave to amend would prove to be an exercise in futility.   *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Although Defendant indicates in its Motion it would prefer a stay over a dismissal, the Court notes that Plaintiff filed this case on June 6, 2018, and as such, it has been pending for three years.   Further, the case has been stayed since July 30, 2020, ECF No. 46, or almost an entire year.   However, a mere four months after a stay was granted, the Ninth Circuit issued its decision on November 19, 2020, meaning that "by its terms, the stay issued . . . expired on that date."   *See* ECF No. 49 at 1:26-28.   "[N]evertheless, Plaintiff's counsel failed to notify the Court within seven days of a decision on the appeal as required by [the] . . . order," resulting in the stay remaining in place for an additional seven (7) months.   *Id.* at 1:27-28.   While normally the Court might consider granting a stay while ordering the parties to provide status reports on the progress of arbitration, the Court has concerns that Plaintiff's counsel cannot be relied upon to provide such status reports, particularly in light of his recent failure to appear at the two previous hearings, one of which included an OSC regarding his first failure to appear.   *See* ECF Nos. 49-54.

Regardless, because all claims in the case are appropriate for arbitration, and therefore, subject to dismissal, Defendant's request for a stay is denied as moot. *See*, *e.g.*, *Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (finding "an issue is moot when deciding it would have no effect within the confines of the case itself").

## V. **CONCLUSION**

For the above reasons, the Court rules as follows:

1. The previous stay in place in this matter is **VACATED**.

2. Defendant's Motion to Compel Arbitration is **GRANTED**.

3. Defendant's Motion to Dismiss is **GRANTED *WITH PREJUDICE***.

4. Defendant's Motion to Strike is **DENIED AS MOOT**.

5. Defendant's Motion to Stay is **DENIED AS MOOT**.

6. Plaintiff's Evidentiary Objections are **OVERRULED**.

7. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

DATED:   June 16, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-45-